IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

QSI Fostoria D.C., LLC,                                          Case No. 3:02CV7466

        Plaintiff

    and                                                            Order

BACM 2001-1 Central Park West, LLC,

        Plaintiff- Intervenor

    v.

General Electric Capital Business
        Asset Funding Corporation ,

        Defendant

This case began as a suit by QSI Fostoria D.C., LLC [QSI] for rent and other damages against General Electric Capital Business Asset Funding Corporation [GE]. QSI owned premises which it leased to Quality Stores, Inc. [Quality], for use as a distribution center. GE had leased equipment to Quality for sorting and otherwise handling packages passing through the distribution center. In conjunction with the lease transaction, QSI and GE executed a Landlord's Agreement and Waiver [Landlord's Agreement] in December, 2000.

An involuntary bankruptcy petition was filed against Quality in October, 2001. Quality rejected its lease with QSI in February, 2002.

Pursuant to the QSI-GE Landlord's Agreement, GE had sixty days after being notified by QSI to remove its equipment. QSI gave notice to GE to remove the equipment on March 27, 2002.

GE ignored that notice, and left the equipment in place. Because the equipment occupied a substantial portion of the premises, QSI was unable to lease them to another tenant.

QSI filed this suit to recover damages resulting from GE's failure to remove the equipment [which occurred only after this suit had been filed].

On April 2, 2004, following a telephone call about this suit from an attorney for GE, BACM 2001-1 Central Park West, LLC [BACM], which asserts that it is entitled to the claims brought in this suit by QSI against GE, sought leave to be substituted as the party plaintiff. The motion to substitute was denied. [Doc. 90]. S*ee QSI-Fostoria DC, LLC v. Gen. Elec. Capital*, 223 F.R.D. 465 (N.D.Ohio 2004). BACM was, however, granted leave to intervene and file a cross-complaint.

QSI and GE settled the original suit, with GE paying $1.5 million to QSI.[1] Pending are cross-motions for summary judgment between BACM and QSI.

For the reasons that follow, BACM's motion for summary judgment shall be denied in part and granted in part. QSI's counter-motion for summary judgment shall be denied.

## Background

The inability to obtain another tenant caused QSI to default on an $8.25 million loan that it originally had obtained to construct the building that it had leased to Quality, and in which GE left its equipment despite QSI's notice to GE to remove its equipment.

BACM is the assignee of QSI's $8.25 million Note and Mortgage, which contains two provisions applicable to the issues addressed in this Order.

Article 3, captioned "Absolute Assignment of Rents and Leases," provides, *inter alia* that

Mortgagor [i.e., QSI] irrevocably assigns to Mortgagee [i.e., BACM] all of Mortgagor's right, title and interest in, to and under: (a) *all* present and future leases of the Property or any portion thereof, all licenses and *agreements relating to the* management, *leasing or operation of the Property* or any portion thereof, and all other agreements of any kind

---

[1]

BACM does not contend that the settlement of QSI's claims against GE for $1.5 million was unreasonable.

> relating to the use or occupancy of the Property or any portion thereof, whether such leases, licenses and agreements are now existing or entered into after the date hereof ("Leases"); and (b) the rents, issues, deposits, and profits of the Property, including, without limitation, all amounts payable and all rights and benefits accruing to Mortgagor under the Leases ("Payments").   .   .   . *This is a present and absolute assignment, not an assignment for security purposes*.   .   .   .

[Doc. 236, Exh. A, § 3.1] [Emphasis supplied].

Article 4, captioned "Security Agreement and Fixture Filing," granted a security interest in favor of the Mortgagee, *inter alia* in all

> rents, issues, deposits and profits of the Property (to the extent, if any, they are not subject to the Absolute Assignment of Rents and Leases); all .   .   . cash receipts, .   .   ., accounts receivable, contract rights, general intangibles, .   .   . *[and] any other rights to the payment of money* .   .   . *arising from or related to the Property* or any business now or hereafter conducted thereon by Mortgagor.   .   .   .

[Doc. 236, Exh. A, § 4.1] [Emphasis supplied].

On July 31, 2003, following QSI's default on the loan, BACM and QSI entered into a Deed in Lieu of Foreclosure Agreement [Deed in Lieu]. Pursuant to that agreement, QSI conveyed the premises to BACM, and was, in turn, relieved of its obligations under the Note and Mortgage if it abided by the terms of the Deed in Lieu. [Doc. 236, Exh. E].

Three provisions of the Deed in Lieu are pertinent to the issues addressed in this Order.

The first is § 1(a), which lists the property to be conveyed by QSI at closing. QSI's claim against GE, though then the subject of this lawsuit, was not in that list. [Doc. 236, Exh. E, § 1(a)].

Section 1(b) of the Deed in Lieu states that "[a]ll of the foregoing assets and properties [i.e., as denominated in § 1(a)] to be acquired by Lender [i.e., BACM] are hereinafter collectively referred to as the "Project." [Doc. 236, Exh. E, § 1(b)].

Section 9 of the Deed in Lieu is captioned "Representations and Warranties of Borrower." Section 9(l) provides:

3

> Borrower intends to transfer and convey to Lender all of Borrower's right, title and interest in and to the Project .    .    . *The Project being transferred to Lender represents all of the property, real or personal, owned by Borrower* and after the Closing Borrower shall have no debts or liabilities to any party.

[Doc. 236, Exh. E, § 9.1] [Emphasis supplied].

After taking the Deed in Lieu, BACM sold the premises to a third party. When it did so, it filed a Satisfaction of Mortgage, releasing the lien that had been created by QSI's Note and Mortgage. [Doc.236, Exh. I].

On August 28, 2002, about ten months prior to commencement of the negotiations leading to the Deed in Lieu agreement between BACM and QSI, QSI had filed this suit against GE. QSI's complaint sought recovery on three theories: 1) breach by GE of the Landlord's Agreement [for which QSI sought to recover the rental value of the premises]; 2) unjust enrichment [a quasi- or implied contract theory, *see e.g,, Gevedon v. Gevedon*, 167 Ohio App. 3d 1, 9 n.3 (2006), for which QSI also sought rental damages]; and 3) trespass, for which QSI sought damages. QSI also sought a declaration that GE had abandoned the equipment and could no longer exercise any claim of right or title to it.

After being granted leave to intervene, BACM cross-claimed against GE and QSI. In its original cross-complaint, BACM asserted: 1) the Deed in Lieu had conveyed QSI's claim against GE to BACM;[2] 2) QSI had breached a representation in the Deed in Lieu that it was transferring all its property via the Deed in Lieu to BACM; 3) if the claim was not transferred via the Deed in Lieu,

---

2

In my order denying BACM's motion to be substituted in place of QSI as party plaintiff, I ruled that QSI had not conveyed its claim against GE in the Deed in Lieu because: 1) § 1(a) specifically listed the property being conveyed; 2) QSI's claim against GE was not included in that list; 3) § 1(b) denominated the property listed as "the Project"; and 4) § 9(l) stated that QSI intended to convey only the "Project" [as defined in § 1(b)] via the Deed in Lieu. [Doc. 90]. *See QSI-Fostoria DC, LLC v. Gen. Elec. Capital*, 223 F.R.D. 465, 468 (N.D.Ohio, August 17, 2004).

4

that document had to be reformed judicially; 4) QSI's conduct constituted fraud; 5) § 3.1 of the original Note and Mortgage between QSI and its lender, which had been assigned to BACM, included an irrevocable assignment of various of QSI's property rights in the premises; 6) § 4.1 of the original Note and Mortgage created a security interest encompassing QSI's claim against GE; and 7) the Satisfaction of Mortgage filed in conjunction with BACM's sale of the property to a third party did not bar BACM's right to receive the proceeds of QSI's claim against GE.

In a subsequent amended complaint, BACM added claims against QSI for allegedly failing to have forwarded a payment of $108,656 received by QSI from the Quality Stores bankruptcy. Those additional claims alleged: 1) such failure breached the Deed in Lieu and an agreement by QSI to give those funds to BACM; 2) an order of replevin should issue in BACM's favor for those funds; and 3) QSI had converted those funds, for which BACM was, in addition to their recovery, entitled to punitive damages.

In February, 2006, QSI and GE reached their $1.5 million settlement, referenced *supra*, of QSI's claims against GE for its failure to have removed its equipment within the sixty-day period specified in the Landlord's Agreement.

BACM claims that it is entitled to the: 1) proceeds of the QSI/GE settlement; and 2) pay-out from the Quality Stores bankruptcy. It has moved for summary judgment on several of its cross-claims. QSI has filed a counter-motion for summary judgment as to those claims.

BACM's motion encompasses five issues asserted in its amended and supplemental cross-complaint.

Four of those issues relate to BACM's claims that: 1) QSI committed fraud when QSI failed to include its claim against GE as part of the property conveyed by the Deed in Lieu; 2) the Deed

in Lieu should be reformed on the basis either of fraud or mutual mistake; 3) QSI breached the "all property" representation [i.e., QSI's representation in § 9(l) of the Deed in Lieu that all its property was being conveyed thereunder]; and 4) it has rights as assignee of the Note and Mortgage from QSI to its original lender.

The fifth issue raised by BACM's motion for summary judgment relates to its claims against QSI for failing to have tendered the pay-out received by QSI from the Quality Stores bankruptcy proceeding.

In addition to seeking summary judgment as to these claims against BACM, QSI's counter-motion contends that, even if some or all of BACM's allegations are correct, BACM has not, as a matter of law, been damaged.

## Discussion

### 1. Fraud

BACM claims that QSI's "all property" representation [i.e., the statement that "The Project being transferred to Lender represents all of the property, real or personal, owned by" QSI] in § 9(l) of the Deed in Lieu was false. The alleged falsity of this representation arises from the fact that, when QSI made that representation, it: 1) had and was in this suit asserting its claim against GE for GE's failure to have removed its equipment; 2) had not listed this claim in § 1(a); and 3) was not conveying the claim to BACM via the Deed in Lieu.

To prevail on its cause of action for fraud, BACM must prove the following elements by clear and convincing evidence:

> (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance

6

upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance.

*Russ v. TRW, Inc.*, 59 Ohio St.3d 42, 49 (1991); *see also The Illuminating Co. v. Cuyahoga County Court of Common Pleas*, 97 Ohio St.3d 69, 74 (2002); *Burr v. Stark Cty. Bd. of Comm'rs*, 23 Ohio St.3d 69 (1986) (Syllabus, ¶ 2).

Several genuine disputes of material fact preclude granting summary judgment to either party as to BACM's fraud claim.

First, there is a factual dispute as to whether BACM was sufficiently aware of QSI's suit against GE that it could not have justifiably relied on any alleged misrepresentation in § 9(l) about "all property" owned by QSI.

While there is no dispute that QSI had given some indication to BACM about the pendency of this litigation before execution of the Deed in Lieu, there is substantial disagreement as to whether that information sufficed to put BACM on notice of QSI's claim against GE. If BACM were on notice, it would not be able to show that it was unaware of the falsity of the "all property" representation or had relied on that representation when it accepted the Deed in Lieu.

In mid-July, 2002, for example, Mr. Robert Gersten, a real estate agent for QSI, had sent Penina Tannenbaum, a loan asset manager and an agent of BACM, several e-mails in which Gersten stated that QSI was seeking to have GE pay storage fees/rent due to the presence of GE's equipment on the premises.[3] A September 4, 2002, e-mail from Gersten to Tannenbaum listed monthly expenses for the premises, and noted that the list did "not include legal fees associated with the GE

---

[3]

QSI also claims that Gersten sent a letter on August 19, 2002, to Tannenbaum in which Gersten stated that QSI had filed suit against GE "to gain settlement" of QSI's storage/rent claims. BACM has no record of having received this letter; it will, however, be deemed for purposes of this opinion to have been sent and received under the "mailbox rule." *See Weiss v. Ferro Corp.*, 44 Ohio St.3d 178, 180 (1989) (stating that O.R.C. § 4123.522 provides "a rebuttable presumption, sometimes called the 'mailbox rule,' that, once a notice is mailed, it is presumed to be received in due course.").

Capital lawsuit." The suit to which Gersten referred was this suit, which had been filed about two weeks before that e-mail.

These communications from Gersten to Tannenbaum did not state the amount being sought by QSI from GE. The September 4, 2002, e-mail, which was the last written communication referencing any legal action between QSI and GE, was sent more than nine months before BACM sent its first draft of the Deed in Lieu to QSI.

Attorney Richard LaValley negotiated the Deed in Lieu on behalf of QSI. During those negotiations, he referenced suit having been filed against GE to force removal of GE's equipment from the premises. LaValley's references were limited to the suit's non-monetary aspects; there is no evidence that LaValley mentioned the prayer in QSI's prayer in complaint for monetary damages.[4]

There is no dispute that Suzanne Amaducci, the attorney who negotiated the Deed in Lieu on behalf of BACM, did not know about QSI's claims for damages.

BACM first became fully aware of this suit and the demand for substantial monetary relief following a phone call on April 2, 2004, from an attorney for GE.

In light of the foregoing, I conclude that there is a genuine dispute about the substance, extent, and effect of BACM's knowledge about QSI's claims against GE, and thus, a dispute as to whether BACM justifiably relied on the "all property" representation in § 9(l) of the Deed in Lieu.

---

[4]

Even prior to filing this suit, QSI claimed that GE owed it substantial sums for continued occupancy of the premises. On December 4, 2002, for example, QSI's attorney sent an e-mail demanding $350,000 "back rent" and future rent of $50,000/month. At one point during the ensuing e-mail exchange GE offered to pay $480,000 "rent" to settle QSI's claim for damages.

Second, the record is unclear as to whether, during his negotiations with BACM, LaValley intended to mislead BACM about the existence, circumstances, and potential value of QSI's claim against GE. If, though cognizant of the "all property" representation in § 9(l), he decided deliberately not to tell BACM about that claim, a jury might find that he intended to mislead GE by his concurrence in the "all property" representation.

On the other hand, despite LaValley's knowledge of the representation and existence of the lawsuit, a jury might find that, through oversight or otherwise, he had neglectfully, rather than deliberately allowed the "all property" statement to stand despite the existence of the claim against GE.

Finally, QSI argues that, as a matter of law, BACM cannot prove damages for fraud if it did not have an interest in the monetary claim prior to negotiating and signing the Deed in Lieu. The unstated logic of QSI's argument is that, if BACM had no possibility of enforcing a legal right to the monetary claim, then QSI would not have conferred a right to the monetary claim through the Deed in Lieu.

QSI's argument regarding the lack of any damages on BACM's part rests on two contentions by QSI: 1) BACM, as a matter of law, could not under the Note and Mortgage enforce any putative right to QSI's claim against GE; and 2) if BACM had no interest in the claim, QSI would never have offered to transfer the claim via the Deed in Lieu.

QSI bases the first contention on the fact that it and GE, when they reached their settlement, denominated the monies being paid by GE as damages for the trespass that GE had committed by leaving its equipment despite being notified by QSI to remove the equipment pursuant to the Landlord's Agreement. QSI's position hinges on its argument that its suit against GE was essentially

9

a tort claim, that such a tort claim would fall under Article 4 of the Note and Mortgage (which is governed by the UCC), and that a tort claim that arises after such agreement would not belong to BACM.

QSI's argument is unpersuasive.

When QSI signed the Deed in Lieu on July 31, 2003, it had not settled the claims in this suit against GE.[5] Among them were claims for breach of contract and unjust enrichment, which would not fall under Article 4 of the Note and Mortgage, but rather under Article 3 (dealing with, *inter alia*, "agreements relating to the leasing or operation of the Property . . . [or] agreements of any kind relating to the use or occupancy of the Property," and the "rents, issues, deposits and profits of the Property").The claims existing at the time of the Deed in Lieu included causes of action based in contract; the parties appear to agree the contractual claims are not subject to the UCC rule against after-acquired tort claims. BACM therefore had an interest in the claims against GE at the time of the signing of the Deed in Lieu.

When it signed the Deed in Lieu, QSI was, contrary to its representation in § 9(l), in possession of property other than that denominated in § 1(b).

The value of that property proved to be, to the satisfaction of both QSI and BACM, $1.5 million. Had QSI not made a false representation in § 9(l) of the Deed in Lieu, the right to maintain the litigation which resulted in those funds being paid to QSI would have been conveyed to BACM. For this reason, BACM could still prove damages for the alleged fraud.

---

[5]

No settlement agreement was reached between QSI and GE until October 22, 2004, at the earliest. [Doc. 135] [Under seal].

10

As to the second contention, the issue of QSI's intent is in dispute, as noted *supra*. BACM has at least shown a basis on which a trier of fact could find that QSI intended to induce reliance when it represented that it was conveying "all of the property" it owned.

Because several elements of BACM's fraud claim are in dispute, neither party is entitled to summary judgment as to BACM's Fourth Cross-Claim.

## 2. Reformation

BACM seeks to have the Deed in Lieu reformed on two grounds: 1) fraud; and 2) mutual mistake.

With regard to BACM's demand for reformation on the basis of fraud [which is a proper ground for reformation, *see, e.g., Greenfield v. Aetna Cas. & Sur. Co*., 75 Ohio App. 122, 128 (1944)], summary judgment is not proper for reasons, discussed *supra*, that it is not proper with regard to BACM's free-standing fraud claim.

A deed may be reformed to correct a mutual mistake. *See, e.g., Berardi v. Ohio Turnpike Comm'n*, 1 Ohio App.2d 365, 370-71 (1965); *see also Shank v. Porter*, 2002 WL 392274, *2 (Ohio App.). Reformation applies generally only to cases involving mutual mistake, rather than unilateral mistake. *Gen. Tire, Inc. v. Mehlfeldt*, 118 Ohio App.3d 109, 115 (1997).

In *Shank, supra*, the court stated:

> A mutual mistake as to a material fact is a mistake as to a basic assumption on which the contract was made which has a material effect on the agreed exchange of performances. Restatement of the Law 2d, Contracts (1979) 385, Mistake, Section 152(1). The Supreme Court of Ohio has adopted the Restatement definition of mutual mistake in *Reilley v. Richards* (1994), 69 Ohio St.3d 352, 353, 632 N.E.2d 507. The contract provision must be contrary to the understanding of the parties to the contract. *Snedegar v. Midwestern Indemn. Co.* (1988), 44 Ohio App.3d 64, 69, 541 N.E.2d 90.

2002 WL 392274, *2; *see also Reilley v. Richards*, 69 Ohio St.3d 352, 353 (1994) (mistake on part of complaining party cannot be based on negligence).

11

Whether there was a mistake, and if so, whether it was mutual are in dispute. BACM claims that the parties intended to convey all of QSI's property, including its claim against GE, via the Deed in Lieu. The "all property" representation in § 9(l), BACM asserts, manifests that intent, as do, it argues, the general purposes and circumstances of any deed in lieu of foreclosure.

QSI contends that there was no mistake, and the Deed in Lieu speaks for itself in § 1 as to the property being conveyed. In any event, QSI asserts, BACM was on notice of this lawsuit, and any mistake, aside from being unilateral, was due to BACM's failure to have followed up on that notice.

Because material facts as to BACM's claim of mutual mistake are in dispute, neither party is entitled to summary judgment as to BACM's Third Cross-Claim.

### 3. Breach of the "All Property" Representation in the Deed in Lieu

BACM claims that QSI breached the warranty in § 9(l) that the "Project" [as defined in § 1] "being transferred" to BACM via the Deed in Lieu "represents all of the property, real or personal, owned by" QSI. That representation was not true, BACM claims, because QSI has withheld, and failed to convey the proceeds of, its claim against GE.

There was no intent to convey anything other than the assets listed in § 9(l), QSI argues, because that was the purpose of having such a list.

The problem with QSI's contention is that it overlooks the express language of the "all property" clause – namely, its representation that all of QSI's property was listed in § 1(b) of the Deed in Lieu. If QSI's claim against GE otherwise was "property," then that representation was not accurate, and the fact that BACM may have expected at the time to get only the denominated

12

property does not eliminate its right to complain about the inaccuracy of the "all property" representation and to be compensated accordingly.

QSI complains that reading the "all property" representation in this manner is excessively narrow and disregards the context. Not so: the context is the "Representations and Warranties of Borrower" section of the Deed in Lieu. Everything in § 9 was, accordingly, a representation or warranty expressly made by QSI.

QSI has it backwards: to rule in its favor, not BACM's, on this issue would require disregarding the context. In this provision, QSI was expressly assuring BACM that it was getting everything owned by QSI in consideration of QSI's being relieved of any further obligations under the Note and Mortgage. That BACM, in the context of taking the Deed in Lieu, would expect or accept anything less than all of QSI's property is implausible, if not unthinkable.

Deeds in lieu offer a "quick and dirty" way for borrowers and lenders encountering and trying to deal with unexpected and undesirable circumstances to avoid further expense, disruption, and uncertainty and move on. These conventional transactions would be less useful and used far less if creditors were not able to count on getting everything of value from debtors in exchange for releasing them from the obligation to pay the balance of their debts.

To accomplish this understandable and indeed crucial objective, it is to be expected that a creditor would include assurance in a deed in lieu that all the debtor's property is being conveyed.

Certainly QSI has not pointed to anything in the record to suggest that this view of the role, structure, and effect of deeds in lieu does not apply in this case. Except for pointing out that the "all property" provision is to be found in a single sentence in a paragraph that otherwise states that QSI intends to convey the entire Project, which, in turn, is in a section covering representations and

13

warranties, QSI has no significant argument against the proposition that the "all property" representation says what it appears to say: namely, that QSI owns nothing other than that which has been listed in § 1, and that that [i.e., everything it owns] is what it is conveying to BACM.

There is nothing odd, peculiar, or commercially unreasonable about this construct and interpretation. A creditor wants assurance that it is getting everything; the agreement drafted by BACM and accepted by QSI has the debtor saying that that is what BACM was getting – everything. If a debtor has something else about which the creditor is unaware, an "all property" clause, especially one as simple, straightforward and direct as the clause in § 9(l), ensures the creditor, if it learns about something else, that it is entitled to get that something else as well.

I am unpersuaded by QSI's suggestion that BACM should have checked the public record, which would have alerted it to the fact of this lawsuit against GE, QSI's claims against GE, and the potential for a substantial recovery.

Among its other purposes, a simple "all property" representation reduces the need for such expensive, time-consuming, and potentially ineffective measures on the part of creditors seeking expeditiously and efficiently to resolve otherwise intractable situations. Prompt, reliable, and effective resolution serves not just the creditor's interests, but those of the debtor as well. Indeed, it may be, and probably often is, even more in the debtor's interest to get out from underneath an unmanageable debt burden as soon as possible. Were this court to tell creditors that assurance of the kind made in the "all property" provision here were effective only after a public record check, the mutually beneficial usefulness of deeds in lieu of foreclosure might well be jeopardized.

Finally, to the extent that QSI argues that the "all property" provision is not covered by Article 2 of the UCC, that is correct: the UCC relates to sales of goods, and this transaction did not

14

involve such sale or otherwise come within the UCC. It is still possible, however, for QSI to have breached a warranty under non-UCC law. *See*, *e.g.*, *Cargile v. Della Coal Services, Inc.*, 1986 WL 16500, at *2 n.2 (6th Cir. 1986) (Unpublished disposition) (noting existence of action for breach of express warranty apart from the UCC, under common law, in Tennessee); *Southern Broadcast Group, LLC v. Gem Broadcasting, Inc.*, 145 F. Supp. 2d 1316 (N.D. Fla. 2001); *CBS Inc. v. Ziff-Davis Publishing Co.*, 75 N.Y. 2d 496, 554 N.Y.S. 2d 449, 553 N.E. 2d 997 (1990); *Point East Condominium Owners' Assn. v. Cedar House Assoc.*, 104 Ohio App.3d 704, 663 N.E.2d 343, 355 (1995) (express warranties in purchase of real property).

I conclude that the only meaning that the "all property" representation can have in the context of the Deed in Lieu generally and § 9 thereof in particular is that it told BACM that it was getting all of QSI's real and personal property via the Deed in Lieu. This representation satisfied BACM's justifiable desire to be certain that it was getting everything of value from QSI.

Due to the falsity of the "all property" provision, BACM's did not get the claim. Contrary to QSI's contentions, BACM did not get all that to which it was entitled under the Deed in Lieu. Summary judgment will therefore be granted in favor of BACM on its Second Cross-Claim.[6] The measure of its damages is $1.5 million, plus interest from the date of payment of the settlement proceeds by GE to QSI.[7]

---

[6]

Because I am granting summary judgment in favor of BACM on its Second Cross-Claim, I need not address any issues presented by BACM's First Cross-Claim, which seeks a declaratory judgment that BACM owns the monetary claims.

[7]

That QSI and GE may have agreed in their settlement that the $1.5 million being paid by GE constituted damages for its trespass does not affect the right of BACM to recover for QSI's breach of the warranty in § 9(l). At the time QSI made that warranty, it was still asserting all three claims alleged in its original complaint: contract [under the Landlord Agreement], quasi-contract [unjust

### 4. Claims Under the Note and Mortgage

In its Sixth Cross-Claim, BACM seeks a declaratory judgment that the Note and Mortgage created a security interest in the monetary claim against GE, that the Deed in Lieu did not affect that interest, and that BACM's security interest is superior to any interest held by QSI. In its Seventh Cross-Claim, BACM seeks declaratory judgment that the Satisfaction of Mortgage filed by BACM when it sold the premises to a third party does not affect its right under the Note and Mortgage  to collect the proceeds of the GE claim.

QSI argues that BACM's claims under the Note and Mortgage cannot prevail because: 1) the Deed in Lieu superceded and replaced the original loan documents; and 2) in any event, the Satisfaction of Mortgage filed by BACM when it sold the premises extinguished any right that otherwise might have been conveyed via the Note and Mortgage.

QSI's first argument, that the Deed in Lieu extinguished any rights held by BACM under the Note and Mortgage, is contradicted by the very text of the Deed in Lieu. That agreement states as follows:

> [T]he Note and Mortgage and all other Loan Documents shall remain in full force and effect after the Closing has been consummated. The interest of Lender in the Project under all the conveyances provided for hereunder shall not merge with the interest of Lender in the Project under the Loan Documents and shall at all times remain SEPARATE and DISTINCT. The liens and security interests evidenced by the Loan Documents shall be and remain at all times valid and continuous liens and security interests on the Project.

[Doc. 236, Exh. E, § 10(e)].

---

enrichment] and tort [trespass]. Nondisclosure of those claims in the Deed in Lieu breached the representation in § 9(l) no matter what later happened to those claims, or how their proceeds came to be denominated.

16

The Deed in Lieu clearly states that it does not supercede or replace the Note and Mortgage.

As to QSI's second argument, it is true that the satisfaction of mortgage would normally prevent BACM from seeking the funds at issue. However, the release of a mortgage is not, by itself, conclusive evidence that the underlying debt has been discharged. *69 Ohio Jurisprudence 3d Mortgages* § 222 (2006). In cases of fraud or mistake, it might still be possible to recover the underlying debt despite the existence of a document releasing the mortgage. *See Transamerica Financial Services v. Stiver*, 61 Ohio App. 3d 49, 53-54 (2d Dist. 1989).

Because there are material issues of disputed fact with respect to fraud and mistake in this case, it would be improper to make any legal conclusions about the viability of any security interests created by the Note and Mortgage, or any conclusions as to the possible effect, or lack thereof, of the Satisfaction of Mortgage. For these reasons, both BACM's and QSI's motions for summary judgment with respect to BACM's Sixth and Seventh Cross-Claims will be denied.

### V. Bankruptcy Proceeds

In its Eighth Cross-Claim, BACM asserts that, in 2005, QSI received monies as an unsecured creditor in the Quality Stores bankruptcy. Further, BACM claims that beforehand, in 2003, QSI assigned its rights to those proceeds in a written instrument ("the Assignment"), pursuant to the Deed in Lieu. BACM claims that QSI breached the Assignment by failing to deliver those funds, totaling $108,656, to BACM. Therefore, BACM claims a breach of the assignment amounting to damages of $108,656, plus interest. BACM seeks summary judgment as to this claim.

In its Tenth Cross-Claim, also based on the bankruptcy proceeds, BACM asserts that QSI's failure to deliver the $108,656 amounted to a conversion. In this claim, BACM seeks not just the the $108,656, plus interest, but punitive damages as well.

17

QSI argues that paragraphs 11(c) and (d) of the Deed in Lieu restrict BACM to the remedy of rescission if it claims that QSI materially breached the Deed in Lieu. Since BACM is not seeking rescission, QSI argues, BACM is not entitled to the bankruptcy proceeds.

Paragraph 11(c), however, says no such thing. That provision of the Deed in Lieu, in the section marked "Conditions to Closing," reads as follows:

> If Borrower shall materially default on its obligations, including but not limited to a refusal to close, Lender shall have the right by written notice to Borrower to terminate this Agreement and in such event the parties shall be restored to their respective positions prior to executing this Agreement.

This paragraph, by its plain language, does not restrict BACM's right to seek any particular remedies. Instead, it expressly ensures its right to a specific nonexclusive remedy – rescission.

QSI's sole argument against summary judgment on the Eighth and Tenth Cross-Claims – that BACM is only permitted to seek rescission of the Deed in Lieu – is without merit. QSI does not challenge BACM's assertion that the Assignment vested in BACM the rights to the bankruptcy distribution.

Punitive damages may be assessed in an action for conversion when the conversion involves "elements of fraud, malice, or insult." *Parrish v. Machlan*, 131 Ohio App. 3d 291, 297 (1997). In this case, the fraud alleged by BACM has yet to be proven and the issues of malice or insult have not been developed in the record. This order will not, therefore, resolve the issue of the propriety of punitive damages.

For the reasons stated above, BACM's motion for summary judgment as to its Eighth Cross-Claim will be granted; neither party will be granted summary judgment as to BACM's Tenth Cross-Claim.

**Conclusion**

18

For the foregoing reasons, neither party is entitled to summary judgment as to BACM's Third, Fourth, Sixth, Seventh and Tenth Cross-Claims. BACM is entitled to judgment in its favor on its Second and Eighth Cross-Claims.

It is, therefore,

ORDERED THAT:

1. The motion of BACM 2001-1 Central Park West, LLC for summary judgment as to its right to judgment in its favor as to the monies obtained by QSI Fostoria D.C., LLC from General Electric Capital Business Asset Funding Corporation be, and the same hereby is denied in part and granted in part; judgment be, and the same hereby is entered in favor of BACM 2001-1 Central Park West, LLC and against QSI Fostoria D.C., LLC  in the amount of $1,500,000, plus interest from the date of receipt of such funds by QSI Fostoria D.C., LLC;

2. The motion of QSI Fostoria D.C., LLC for summary judgment as to the monies obtained from General Electric Capital Business Asset Funding Corporation be, and the same hereby is denied;

3. The motion of BACM 2001-1 Central Park West, LLC for summary judgment as to the proceeds obtained by QSI Fostoria D.C., LLC from the Quality Stores, Inc. bankruptcy be, and the same hereby is granted; judgment be, and the same hereby is entered in favor of BACM 2001-1 Central Park West, LLC and against QSI Fostoria D.C., LLC in the amount of $108,656, plus interest from the date of receipt of such funds by QSI Fostoria D.C., LLC; ruling as to BACM's claim for punitive damages as to its claim for conversion held in abeyance; and

19

4. The motion of QSI Fostoria D.C., LLC for summary judgment as to the proceeds obtained

from the Quality Stores, Inc. bankruptcy be, and the same hereby is denied.

5. A scheduling conference is set for February 12, 2007 at noon.

So ordered.


                                        s/James G. Carr
                                        James G. Carr
                                        Chief Judge