IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

QSI-Fostoria DC, LLC,            3:02CV7466

    Plaintiff,

v.            ORDER

General Electric Capital Business
Asset Funding Corporation,

    Defendant.

Plaintiff QSI-Fostoria D.C., LLC ("QSI") moves for reconsideration of a previous decision granting partial summary judgment to Plaintiff-Intervenor BACM 2001-1 Central Park West, LLC ("BACM"). That order denied summary judgment to both parties on BACM's Third (reformation), Fourth (fraud), Sixth (declaratory judgment on UCC security interest), Seventh (declaratory judgment on non-UCC security interest), and Tenth (conversion of bankruptcy distribution) Cross-Claims and granted BACM summary judgment on its Second (breach of contract re proceeds of GE suit) and Eighth (breach of contract re bankruptcy distribution) Cross-Claims.

**Background**

The January 17, 2007, Order lays out the facts of this case in detail. [Doc. 249].

**Discussion**

QSI's advances several grounds for reconsideration: 1) the most recent decision granting summary judgment on two of BACM's Cross-Claims conflicts with earlier orders of mine; 2) the facts, as found in the 2007 opinion, should lead to a different legal result; 3) genuine issues of material fact remain that would bar recovery by BACM; 4) BACM has not proven its damages; 5)

BACM's Cross-Claims for breach of contract and fraud with regard to the GE settlement proceeds are alternative theories of recovery, and the fraud claim should have been dismissed if BACM prevailed on the breach of contract claim; 6) BACM's Cross-Claims for breach of contract and conversion with regard to the Quality bankruptcy distribution are alternative theories of recovery, and the conversion claim should have been dismissed if BACM prevailed on the breach of contract claim; and 7) QSI should not be forced to pay interest on any funds after those funds were deposited into the court's registry.

## 1. Conflict with Earlier Orders

The January 17, 2007, Order does not conflict with earlier rulings, and if it did, it would still stand. In the October 7, 2004 Order, which QSI identifies as the source of such conflict, I specifically stated that "BACM has filed a reply to QSI's opposition to GE's § 1262(b) motion in which it states that the satisfaction of mortgage did not constitute satisfaction of the debt that the mortgage secured. That may well be so (and, perhaps, *another issue for a later day between BACM and QSI*)." [Emphasis supplied]. Thus, the 2004 Order anticipated that the satisfaction of mortgage issue would be fully adjudicated in later rulings.

To the extent that the 2007 Order backtracks and reinterprets legal or evidentiary issues, the new order replaces the old. The principle implicitly embraced by QSI's argument, although it does not mention it by name, is the law-of-the-case doctrine. That doctrine, however, "'merely expresses the practice of courts generally to refuse to reopen what has been decided, [but is] not a limit to their power.'" *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 817 (1988) (quoting *Messinger v. Anderson*, 225 U.S. 436, 444 (1912)). A federal court "has the power to revisit prior decisions of its own or of a coordinate court in any circumstance." *Id.*

**2. Facts Should Lead to Different Legal Results**

QSI argues that the facts I relied on in the January 17, 2007, Order should lead to different legal results. According to the argument, I found QSI's claim against GE to consist of lost rents. Such rents would be covered under Article III of the Note and Mortgage, which was a present assignment to BACM. In other words, QSI argues that, if you believe my assessment of the facts in the January 17, 2007, Order, then at the time of the signing of the Deed in Lieu, BACM had a right to the GE money - not QSI.

QSI then takes this line of reasoning to its natural conclusion. If BACM owned the rents before the Deed in Lieu was negotiated and signed, then QSI never breached any representation that it was handing over all its property, because QSI did not own the "rents" at issue.

QSI misunderstands the nature of the property it held. At the time it signed the Deed in Lieu, QSI did not possess "rents"; rather, QSI possessed *claims* for rents. January 17, 2007, Order at p. 10. Those claims, as asserted in its complaint in this case, constituted choses in action, which under Ohio law "'embrace[] demands arising out of a tort, as well as causes of action originating in the breach of a contract.'" *Pilkington N. Am., Inc. v. Travelers Cas. & Sur. Co.*, 112 Ohio St.3d 482, 499 (2006) (citing *Cincinnati v. Hafer*, 49 Ohio St. 60, 65 (1892)). A chose in action, moreover, is "[o]ne of the well recognized divisions of personal property . . . into property in possession, and property or choses in action." *Hafer*, 49 Ohio St. at 65. QSI possessed a chose in action due to the simple fact that it was, at the time of the Deed in Lieu, actually asserting that claim in court.[1]

---

[1] This is despite any argument that QSI may have about when the chose in action accrued and to whom it rightfully belonged. Even if one could argue that it was BACM, not QSI, who possessed a chose in action for the lost rents, QSI was actually asserting a purported right in federal court. It has taken several years of discovery, briefing and argument to determine the merits of each party's claims, and it would have been impossible to prejudge any such determinations when the Deed in

Article III of the Note and Mortgage created a "present and absolute assignment" of QSI's "right, title and interest in, to and under . . . all licenses and agreements relating to the management, leasing or operation of the Property . . . and all other agreement of any kind relating to the use or occupancy of the Property or any portion thereof . . . [and] rents, issues, deposits and profits of the Property." Clearly, the chose in action was a "right, title [or] interest in, to and under" such property. It is undisputed, however, that QSI maintained possession, and a claim of ownership, of the chose in action throughout the life of the mortgage.[2]

When QSI signed the Deed in Lieu in 2003, it represented that "[t]he Project being transferred to Lender represents all of the property, real or personal, owned by [QSI]." Since QSI maintained possession of the chose in action, and since it maintained a claim of ownership of the chose in action, then as a matter of law, it breached its representation in the Deed in Lieu.

Also, several courts have held that, when assigning a chose in action, the assignor may retain enough of an interest in the claim to be a real party in interest. *See, e.g., Rohner, Gehrig & Co. v. Capital City Bank*, 655 F.2d 571, 579 (5th Cir. 1981); *Diversa-Graphics, Inc. v. Management & Technical Services Co.*, 561 F.2d 725, 727 (8th Cir. 1977); *Audio-Visual Marketing Corp. v. Omni Corp.*, 545 F.2d 715, 719 (10th Cir. 1976); *Texas San Juan Oil Corp. v. An-Son Offshore Drilling Co.*, 194 F. Supp. 396, 397 (S.D.N.Y. 1961); *U.S. for Use and Benefit of Allen Const. Corp. v. Verrier*, 179 F.Supp. 336, 341 (D.C. Me. 1959). Therefore, it is conceivable that, as an assignee, the Note and Mortgage transferred to BACM the rights to QSI's claim against GE, that QSI retained

---

Lieu was signed.

[2]

Even if it were found that QSI did not "own" the right to the funds at the time the Deed in Lieu was signed (based on the assertion that Article III was a present assignment), then BACM would have been, and would still be, the owner of that right.

4

enough of an interest to pursue a lawsuit afterward, and that, by failing to transfer or relinquish those remaining rights through the Deed in Lieu, QSI breached the Deed in Lieu's "all property" representation.

BACM's filing of the Satisfaction of Mortgage after the execution of the Deed in Lieu does not somehow erase QSI's prior breach. QSI, in its motion for reconsideration, agrees: "QSI's alleged representation contained in the 'all property' clause has nothing to do with BACM's filing of the Satisfaction." [Doc. No. 258 at p. 13]. In any event, as explained in the January 17, 2007, Order, the Satisfaction of Mortgage may not have extinguished any underlying debt owed by QSI, under the Note and Mortgage, to BACM. QSI's contention that the facts, as found, should lead to different legal results, lacks merit.

### 3. Genuine Issues of Material Fact Bar Recovery by BACM

QSI insists that, even if it breached of the Deed in Lieu by making a false representation, genuine issues of material fact exist as to whether BACM waived its rights under the contract. QSI asserts that its affirmative defense of waiver must still be considered, based on the disputed issues of fact, as recognized in the January 17, 2007, Order, regarding BACM's reasonable reliance on QSI's "all property" representation. The January 17 Order acknowledged conflicting evidence concerning BACM's knowledge of the GE suit when signing the Deed in Lieu.

To begin with, QSI's attempt to equate a lack of reasonable reliance (one element of a fraud claim) with contractual waiver falls short. A lack of reasonable reliance could be shown simply by BACM's knowledge of the GE suit when signing the Deed in Lieu. Knowledge alone, however, would be insufficient to demonstrate waiver.

Waiver requires some "'words or conduct'" by the waiving party of his intent to abandon some right under the contract. *Automated Solutions Corp. v. Paragon Data Sys.*, 167 Ohio App. 3d 685, 695 (Ohio Ct. App. 2006) (citing *White Co. v. Canton Transportation Co.*, 131 Ohio St. 190, 198 (1936)). In any event, waiver is inapplicable to the facts of this case. The "all property" provision misrepresented what was included in the agreement, stating that the "[t]he Project being transferred to Lender represents all of the property." The "all property" representation bears little resemblance to the typical contract provision that can be waived, such as, for instance, a provision for the right to cancel the contract in the event of a later breach. *E.g.*, *Cleveland Concession Co. v. City of Cleveland*, 84 Ohio App. 1, 9-10 (Ohio Ct. App. 1948). In the end, QSI's waiver defense amounts to saying that BACM interpreted the phrase, "all of the property," as somehow meaning less than "all," which conveys the plain meaning of the contract unequivocally.

Finally, QSI claims that its "waiver defense has not been reviewed." That is correct, because its waiver defense was never raised as a reason why summary judgment should be denied for BACM. QSI may not raise the issue retroactively by drawing imperfect parallels to other issues briefed by the parties.

### 4. BACM Has Not Proven Damages

QSI challenges the $1.5 million award of damages provided pursuant to the January 17, 2007, Order. QSI advances several arguments: 1) BACM has not established what it would have received had it, not QSI, pursued the claims; 2) there is no reliable evidence that BACM would have prosecuted what it considered were insignificant claims against GE; 3) QSI is entitled to a setoff for the costs it incurred to obtain the settlement; 4) that claims settled were not just for "rent," but also for loss of investment, a claim that BACM could not have pursued.

6

QSI's first two points obscure a rather straightforward rationale for the award of damages: 1) QSI secured from GE monies, the right to which was in dispute; 2) BACM proved that the right to those monies belongs to BACM; and 3) BACM therefore deserves those monies. Speculation as to whether BACM would have asserted its rights, and whether it would have done so skillfully, are simply not relevant.

QSI asks for a setoff for the costs it incurred in obtaining the GE settlement money, calling BACM's award of damages a "windfall." Specifically, QSI would like to be repaid for its "prosecuting, trying, negotiating, and obtaining the GE liability findings as well as the ultimate settlement." BACM argues that QSI is a "volunteer," who has willingly and of its own accord provided value to BACM, but does not deserve remuneration.

QSI's demand, which is essentially a limited request for attorneys' fees and costs, is not appropriate. Courts provide such awards only in specific circumstances, such as a statutory mandate, that do not apply in this instance. *See*, *e.g.*, Heinsz, *Attorney's Fees for Prevailing Title VII Defendants: Toward a Workable Standard*, 8 U. Tol. L. Rev. 259, 265 (1977). As with any civil case, QSI and BACM entered this lawsuit with the hope of obtaining relief amidst the ever-present possibility of failure. That QSI has engaged in years of litigation, only to find that it is not entitled to the funds it sought, is certainly disconcerting for the company. It is not the business of this court, however, to recompense QSI for risks that could have been calculated from the outset.

As for the types of claims that QSI pursued, the January 17, 2007, Order stated that:

> At the time QSI made that warranty, it was still asserting all three claims alleged in its original complaint: contract [under the Landlord Agreement], quasi-contract [unjust enrichment] and tort [trespass]. Nondisclosure of those claims in the Deed in Lieu breached the representation in § 9(l) no matter what later happened to those claims, or how their proceeds came to be denominated.

7

January 17, 2007, Order at p. 16 n.7.

QSI has not challenged the logic underlying this portion of the order. QSI's motion for reconsideration shall be denied with respect to the issue of damages.

### 5. Alternative Remedies for Breach of Contract and Fraud

The January 17, 2007, Order granted summary judgment for BACM on its breach of contract Cross-Claim for the GE settlement funds but denied both parties summary judgment on its Cross-Claim for fraud. QSI argues that, if BACM recovers on its contract claim for the GE settlement funds, it cannot also recover on its fraud claim relating to the same money. According to QSI, for BACM to have a sustainable fraud claim in addition to a contract claim, BACM must show that "QSI owed BACM a duty separate from whatever duty it claims it was due under [the 'all property' provision]." BACM, on the other hand, asserts that the two are not alternative remedies, and that its fraud claim may proceed.

Where an action sounds in contract, "the averment that the breach was unlawful, wilful, wanton and malicious does not change the action from one *ex contractu* to one *ex delicto*." *Battista v. Lebanon Trotting Asso.*, 538 F.2d 111, 117 (6th Cir. 1976) (citing *Ketcham v. Miller*, 104 Ohio St. 372, Syl. 1 (1922)). Ohio courts have found an exception to that rule, especially in dealings between insurers and insureds, but such a supra-contractual duty arises from the unique relationship between those parties. *Id.* at 117-18; *Randleman v. Fidelity Nat. Title Ins. Co.*, 465 F.Supp. 2d 812, 826 (N.D. Ohio 2006). A tort exists "only if a party breaches a duty which he owes to another independently of the contract, that is, a duty which would exist even if no contract existed." *Wolfe v. Continental Casualty Co.*, 647 F.2d 705, 710 (6th Cir. 1981).

QSI's request to reconsider this aspect of the January 17, 2007, Order is well-taken. BACM's fraud claim rests upon the "all property" provision in the Deed in Lieu (termed the "Property Conveyance Representation" by BACM). In its Fourth Cross-Claim, BACM asserts that "[i]f the Deed in Lieu Agreement did not convey from QSI to BACM the Monetary Claims and/or proceeds therefrom, BACM has been damaged, as a direct and proximate result of QSI's fraud in making the Property Conveyance Representation, in the amount of the Monetary Claims."

Aside from a representation made in the text of the Deed in Lieu, BACM does not allege that QSI made any false representations that would form the basis of a fraud claim. BACM's fraud claim hinges on a representation made in the Deed in Lieu, and the duty to perform the "all property" provision would not arise "if no contract existed." *Wolfe*, 647 F.2d at 710. As a result, QSI will be granted summary judgment with respect to BACM's Fourth Cross-Claim.

### 6. Alternative Remedies for Breach of Contract and Conversion

The parties make similar arguments regarding BACM's ability concurrently to pursue remedies for both breach of contract and conversion. The January 17, 2007, Order granted BACM summary judgment on its breach of contract Cross-Claim relating to the Quality bankruptcy proceeds but denied both parties summary judgment on its Cross-Claim for conversion (relating to the same funds). QSI maintains that it is impossible, under Ohio law, to prevail on both theories; BACM disagrees.

QSI's request for reconsideration on this point is, once again, well-taken. BACM's allegations with respect to its conversion claim mirror its related allegations for breach of contract, and its conversion claim could not exist independently of its claim for breach of contract. In such a situation, BACM's conversion claim cannot survive. *Herzig v. Oncology/Hematology Care, Inc.*,

2001 WL 1775378, at *4 (W.D. Ky.) (citing *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 115 Ohio App. 3d 137, 151 (Ohio Ct. App. 1996)). As a result of the foregoing, QSI's motion for summary judgment will be granted with respect to BACM's Tenth Cross-Claim.

### 7. Interest on Funds in the Court Registry

The January 17, 2007, Order stipulated that QSI pay the full amount of the $108,656 it received for the Quality bankruptcy distribution, plus interest for the time period since it received that money. QSI points out that, between its receipt of those funds in April, 2005, and the court's issuance of the January 17, 2007, Order, QSI deposited those funds in the court's interest-bearing registry. QSI argues that it should only be liable for interest accruing between its receipt of the funds and its depositing those funds in the court registry.

QSI's request to reconsider this portion of the January 17, 2007, Order is well-taken. BACM is entitled to the funds in the court's registry, plus any interest accruing between QSI's receipt of those funds and its depositing them into the registry, but BACM is not entitled to any additional interest.

### Conclusion

For the foregoing reasons, it is hereby

ORDERED THAT QSI's motion for reconsideration be, and the same hereby is:

1) Granted as to BACM's Cross-Claims for fraud and conversion; and on reconsideration, summary judgment be, and the same hereby is entered in favor of QSI and against BACM as to such claims;

2) Granted as to QSI's payment of interest on funds it previously deposited in the court registry, and, on reconsideration, it is further ordered that QSI be, and it hereby is liable for

interests on the withheld funds only from the date of their receipt by QSI until the date of its deposit of those funds in the Court's Registry; and

3) Denied in all other respects.

The parties shall file a status report on or before August 30, 2007, informing the Court whether any issues remain to be resolved by this Court, and if so, identifying those issues.

So ordered.

                                              s/James G. Carr
                                              James G. Carr
                                              Chief Judge