IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

QSI-Fostoria DC, LLC                                              Case No. 3:02CV7466

            Plaintiff

   v.                                                                            ORDER

General Electric Capital Business
Asset Funding Corporation,

            Defendant

This case presently involves a contract dispute arising from the sale of property rights. It began, however, as a suit for rent and other damages by QSI Fostoria DC [QSI], an Ohio-based affiliate of Quality Stores, Inc.– a Delaware-based corporation and one of the nation's largest retailers of agricultural equipment – against General Electric Capital Business Asset Funding Corporation [GE], a Connecticut-based subsidiary of General Electric Corporation primarily responsible for consumer and commercial finance operations. Bank of America Commercial Mortgage 2001-1 Central Park West [BACM], a New York-based lender, subsequently intervened and filed a cross-complaint. Jurisdiction is proper under 28 U.S.C. § 1332(a).

1

Pending is BACM's motion to certify for appeal my earlier decision granting summary judgment with regards to its claims for breach of the Deed in Lieu of the Foreclosure Agreement [Deed in Lieu] and breach of the Assignment, under the Deed in Lieu. For the reasons that follow, BACM's motion shall be denied.

## Background

QSI owned premises leased to Quality for use as a distribution center. GE leased equipment to Quality for sorting and handling packages passing through the distribution center. In conjunction with the lease transaction, QSI and GE executed a Landlord's Agreement and Waiver [Landlord's Agreement] in December, 2000.

An involuntary bankruptcy petition was filed against Quality in October, 2001. Quality rejected its lease with QSI in February, 2002.

Under the QSI-GE Landlord's Agreement, GE had sixty days to remove its equipment after QSI notified it to do so. QSI gave notice to GE to remove the equipment on March 27, 2002.

GE ignored that notice and left the equipment in place. Because the equipment occupied a substantial portion of the premises, QSI was unable to lease them to another tenant.

QSI filed this suit to recover damages resulting from GE's failure to remove the equipment.[1]

On April 2, 2004, following a telephone call about this suit from an attorney for GE, BACM which asserts that it is entitled to the claims brought in this suit by QSI against GE, sought leave to be substituted as the party plaintiff. I denied the motion to substitute,[Doc. 90] *see QSI-Fostoria DC, LLC v. Gen. Elec. Capital*, 223 F.R.D. 465 (N.D. Ohio 2004), but I granted leave to BACM to intervene and file a cross-complaint.

---

[1] Removal occurred only after QSI filed its complaint.

2

QSI and GE settled the original suit, with GE paying $1.5 million to QSI.

The inability to obtain another tenant caused QSI to default on an $8.25 million loan originally obtained to construct the building leased to Quality, and in which GE left its equipment despite QSI's notice to GE to remove such.

BACM is the assignee of QSI's $8.25 million Note and Mortgage, which contains two provisions particularly relevant to each party's claims.

Article 3, captioned "Absolute Assignment of Rents and Leases," provides, *inter alia*, that the Mortgagor [i.e., QSI] irrevocably assigns to the Mortgagee [at this time, by assignment, BACM] all of the Mortgagor's right, title and interest in, to and under:

> (a) all present and future leases of the Property or any portion thereof, all licenses and agreements relating to the management, leasing or operation of the Property or any portion thereof, and all other agreements of any kind relating to the use or occupancy of the Property or any portion thereof, whether such leases, licenses and agreements are now existing or entered into after the date hereof ("Leases"); and (b) the rents, issues, deposits, and profits of the Property, including, without limitation, all amounts payable and all rights and benefits accruing to Mortgagor under the Leases ("Payments"). . . . This is a present and absolute assignment, not an assignment for security purposes. . . .

[Doc. 236, Exh. A, § 3.1]..

Article 4, captioned "Security Agreement and Fixture Filing," granted a security interest in favor of the Mortgagee, inter alia in all

> rents, issues, deposits and profits of the Property (to the extent, if any, they are not subject to the Absolute Assignment of Rents and Leases); all . . . cash receipts, . . ., accounts receivable, contract rights, general intangibles, . . . [and] any other rights to the payment of money . . . arising from or related to the Property or any business now or hereafter conducted thereon by Mortgagor. . . .

[Doc. 236, Exh. A, § 4.1].

On July 31, 2003, following QSI's default on the loan, BACM and QSI entered into a Deed

3

in Lieu of Foreclosure. Under that agreement, QSI conveyed the premises to BACM, and was, in turn, relieved of its obligations under the Note and Mortgage if it abided by the terms of the Deed in Lieu. [Doc. 236, Exh. E].

Three provisions of the Deed in Lieu are relevant to each party's claims. The first is § 1(a), that lists the property to be conveyed by QSI at closing. QSI's claim against GE, though then the subject of this lawsuit, was not in that list. [Doc. 236, Exh. E, § 1(a)]. Section 1(b) of the Deed in Lieu states that "[a]ll of the foregoing assets and properties [i.e., as denominated in § 1(a)] to be acquired by Lender [i.e., BACM] are hereinafter collectively referred to as the "Project." [Doc. 236, Exh. E, § 1(b)].

Section 2(a) described the three conveying documents QSI had to execute and deliver to BACM to effectuate conveyance of the § 1(a) property from QSI to BACM, including the Assignment, at issue here, conveying QSI's intangible personal property and any remaining rights QSI had in the Quality bankruptcy.

Section 9 of the Deed in Lieu is captioned "Representations and Warranties of Borrower." Section 9(l) provides:

> Borrower intends to transfer and convey to Lender all of Borrower's right, title and interest in and to the Project . . . . The Project being transferred to Lender represents all of the property, real or personal, owned by Borrower and after the closing Borrower shall have no debts or liabilities to any party.

[Doc. 236, Exh. E, § 9.1].

After taking the Deed in Lieu, BACM sold the premises to a third party. When it did so, it filed a Satisfaction of Mortgage, releasing the lien QSI's Note and Mortgage had created. [Doc. 236, Exh. I].

On August 28, 2002, about ten months prior to commencement of the negotiations leading

4

to the Deed in Lieu agreement between BACM and QSI, QSI filed this suit against GE. QSI's complaint sought recovery on three theories: 1) GE's breach of the Landlord's Agreement [for which QSI sought to recover the rental value of the premises]; 2) unjust enrichment [a quasi- or implied contract theory, *see e.g., Gevedon v. Gevedon*, 167 Ohio App. 3d 1, 9 n.3 (2006), for which QSI also sought rental damages]; and 3) trespass, for which QSI sought damages. QSI also sought a declaration that GE had abandoned the equipment and could no longer exercise any claim of right or title to it.

After being granted leave to intervene, BACM cross-claimed against GE and QSI. In its original cross-complaint, BACM asserted: 1) the Deed in Lieu had conveyed QSI's claim against GE to BACM; 2) QSI had breached a representation in the Deed in Lieu that it was transferring all its property via the Deed in Lieu to BACM; 3) if the claim was not transferred via the Deed in Lieu, that document had to be reformed judicially; 4) QSI's conduct constituted fraud; 5) § 3.1 of the original Note and Mortgage between QSI and its lender, which had been assigned to BACM, included an irrevocable assignment of various of QSI's property rights in the premises; 6) § 4.1 of the original Note and Mortgage created a security interest encompassing QSI's claim against GE; and 7) the Satisfaction of Mortgage filed in conjunction with BACM's sale of the property to a third party did not bar BACM's right to receive the proceeds of QSI's claim against GE.

In a subsequent amended complaint, BACM added claims against QSI for allegedly failing to have forwarded a payment of $108,656 received by QSI from the Quality Stores bankruptcy. Those additional claims alleged: 1) such failure breached the Deed in Lieu and an agreement by QSI to give those funds to BACM; 2) an order of replevin should issue in BACM's favor for those funds; and 3) QSI had converted those funds, for which BACM was, in addition to their recovery, entitled

5

to punitive damages.

In February, 2006, QSI and GE, as noted above, reached their $1.5 million settlement of QSI's claims against GE for its failure to have removed its equipment within the sixty-day period specified in the Landlord's Agreement.

BACM claims that it is entitled to the: 1) proceeds of the QSI/GE settlement; and 2) pay-out from the Quality Stores bankruptcy. It moved for summary judgment on several of its crossclaims. QSI filed a counter-motion for summary judgment as to those claims.

BACM's motion for summary judgement encompassed five issues asserted in its amended and supplemental cross-complaint.

Four of those issues related to BACM's claims that: 1) QSI committed fraud when QSI failed to include its claim against GE as part of the property the Deed in Lieu conveyed; 2) the Deed in Lieu should be reformed on the basis of either fraud or mutual mistake; 3) QSI breached the "all property" representation [i.e., QSI's representation in § 9(l) of the Deed in Lieu that all its property was being conveyed thereunder]; and 4) it has rights as assignee of the Note and Mortgage from QSI to its original lender.

The fifth issue BACM's motion for summary judgment raised related to its claims against QSI for failing to have tendered the pay-out QSI received from the Quality Stores bankruptcy proceeding.

In addition to seeking summary judgment as to these claims against BACM, QSI's counter-motion contended that, even if some or all of BACM's allegations are correct, BACM has not, as a matter of law, been damaged.

In my order of January 17, 2007, I granted summary judgement with regards to BACM's claims that: 1) QSI breached the "all of the property" representation in the Deed; and 2) QSI breached the Assignment, under the Deed in Lieu, by failing to deliver to BACM the monies it received from the Quality bankruptcy. Because I granted summary judgment as to BACM's claim that QSI breached § 9 of the Deed in Lieu, I did not address BACM's cross-claim seeking declaratory judgment that the claims not transferred by QSI rightfully belonged to BACM. I denied summary judgment to both parties on all other claims.

QSI subsequently filed a motion for reconsideration. Subsequently, in an August 17, 2007 order, I overruled QSI's motion for reconsideration, with two minor exceptions: I granted summary judgment in QSI's favor with regards to BACM's claims for fraud and conversion of the monies received from QSI's bankruptcy- its second and eighth cross-claims respectively.

The remaining cross-claims therefore include: the first cross-claim (declaratory judgment that the claims not transferred by QSI belong to BACM); the third cross-claim (reformation of the Deed in Lieu); fifth cross-claim (declaratory judgment that under the Note and Mortgage, QSI assigned its monetary claims against GE to BACM); sixth cross-claim (declaratory judgment that the Mortgage created a security interest in favor of BACM in the monetary claims against GE); and seventh cross-claim (declaratory judgment that the satisfaction of the mortgage does not affect BACM's security interest in the monetary claims).[2]

## Discussion

---

[2] BACM's ninth cross-claim (replevin of the bankruptcy distribution at issue) also remains active. BACM, however, has stated that it will voluntarily dismiss it with prejudice.

Rule 54(b) of Federal Rules of Civil Procedure allows immediate review of certain district court orders before entry of final judgment as to all matters in dispute. Fed. R. Civ. P. 54(b); *see e.g., Curtiss-Wright Corp. v. General Electric Co.*, 446 U.S. 1, 3 (1980); *Liberty Mutual Ins. Co. v. Wetzel*, 424 U.S. 737, 742-43 (1976); *Sears Roebuck & Co. v. Mackey*, 351 U.S. 427, 435 (1956). "Although Rule 54(b) relaxes the traditional finality requirement for appellate review, it does not tolerate immediate appeal of every action taken by a district court." *General Acquisition v. Gencorp, Inc.*, 23 F.3d 1022, 1026 (6th Cir. 1994). The rule is specifically "designed to facilitate the entry of judgment on one or more claims, or as to one or more parties, in a multi-claim/multi-party action." *Id.* at 1027. That said, the rule is reserved for "infrequent harsh cases," *id.*; *see also Elliott Co. v. Liberty Mut. Ins. Co.*, 2007 U.S. Dist. LEXIS 24139, 11 (N.D. Ohio), and is "not to be used routinely or as a courtesy or accommodation to counsel." *Manor Care, Inc. v. First Specialty Ins. Corp.*, 2006 WL 3097193, *1 (N.D. Ohio). Ultimately, the district court has discretion whether to certify a claim for immediate appeal. *Schemmer v. ChartONE, Inc.*, 2007 WL 2344751, *1 (N.D. Ohio).

### 1. Final Judgment

Rule 54(b) certification involves a two-step inquiry. First, the court's decision must represent its final judgment with regard to one of the party's claims. *Curtiss-Wright*, *supra,* 466 U.S. at 7. The Sixth Circuit has said that "the concept of a 'claim' under Rule 54(b) denotes the aggregate of operative facts that give rise to a right enforceable in the courts. *McIntyre v. First Nat. Bank of Cincinatti*, 585 F.2d 190, 192 (6th Cir. 1978). Accordingly, where two theories of liability or two types of damages are sought arising from a single transaction, neither claim will be final until both have been decided. *See Daleure v. Commonwealth of Kentucky*, 269 F.3d 540, 543 (6th Cir. 2001)

(concluding plaintiff made only a single claim where different theories of damages were asserted for the same underlying injury based on the same operative facts); *McIntyre*, *supra,* 585 F.2d at 192 ("Moreover, that the state claim alleged under Count IV is on a separate legal theory of fraudulent conveyance does not affect the non-finality of the judgment as it relates to the federal securities law claim embodied in the count."). It is not enough, however, that the claims share a common, general factual background. *See GenCorp, Inc. v. Olin Corp.*, 390 F.3d 433, 442 (6th Cir. 2004) (finding that even though both claims arose as a result of TDI's disposal of hazardous waste, Olin's contribution claim under CERCLA and GenCorp's breach of contract claim were separate); *Williams v. Provident Investment Counsel*, 2003 WL 22722920, *1 (N.D. Ohio) (finding trustees' claim against trust advisor to be distinct from trust advisor's contribution claim against third-parties even though both claims arose as a result of the trust's mismanagement); *City of Toledo v. Beazer Materials and Services, Inc.*, 1996 U.S. Dist. LEXIS 4136, *11 (N.D. Ohio) (finding that contractual indemnity and CERCLA liability claims were separate for purposes of "final judgment" even though both arose out of defendant's inappropriate operation of a plant).

BACM's claim for breach of the Deed in Lieu as a result of QSI's failure to convey to BACM its claims against GE and any monetary settlement resulting from such is almost identical to BACM's first cross claim seeking a declaratory judgment that QSI was required to do so. As noted above, claims seeking separate types of relief based on the same legal theory are generally considered part of the same claim. *See Manor Care*, *supra,* 2006 WL 3097193, *6 (finding requests for monetary and declaratory relief to be one claim). The facts and elements relevant to each claim are identical. *See id.* ("I find defendant's argument persuasive that plaintiff seeks monetary and declaratory relief, both remedies based on a single aggregate of operative fact, and therefore a single

9

claim for purposes of appellate jurisdiction."). For this reason, certification as to BACM's claim for breach of the Deed in Lieu shall be denied.

Although they share a common factual background, it is not clear that BACM's breach of Assignment claim arises out of the same set of operative facts as or involves the same questions of law central to the remaining claims. First, none of the remaining claims turn specifically on the interpretation of the Assignment contained in the Deed in Lieu. All remaining claims involve either interpretation or reformation of separate documents or separate clauses in the Deed in Lieu. Second, none of the remaining claims involve the bankruptcy proceeds QSI received after Quality's bankruptcy. The remaining claims primarily involve ownership of the monetary claims QSI asserted against GE.

### 2. No Just Reason for Delay

Second, before a court may certify a claim for appeal, it "must expressly determine that there is no just reason to delay appellate review." *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 7 F. Supp.2d 954, 961 (N.D. Ohio 1998) (citing *General Acquisition*, *supra,* 23 F.3d at 1026). The Sixth Circuit has a "non-exhaustive" list of factors courts should consider when making this determination:

> (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim [that] could result in a set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like. Depending [on] the facts of the particular case, all or some of the above factors may bear [on] the propriety of the trial court's discretion in certifying a judgment as final under Rule 54(b).

*Corrosioneering, Inc. v. Thyssen Environmental Systems, Inc.*, 807 F.2d 1279, 1283 (6th Cir. 1986).

More simply, the district court must "determine whether the needs of the parties' outweigh the efficiency of having one appeal at the conclusion of the case in its entirety, and it must spell out its reasons for concluding that prompt review is preferable." *GenCorp*, *supra,* 390 F.3d at 442.

Practical considerations caution against granting BACM's motion to certify its claim for breach of the Assignment. While the claims may not be similar enough to BACM's remaining claims to be considered parts of the same claim, they share a common factual background that is complicated, but necessary to their understanding. *See Elliott Co. v. Liberty Mut. Ins. Co.*, 239 F.R.D. 479, 482 (N.D. Ohio 2006) (finding that even though plaintiff's two claims were not similar enough to constitute a single claim, their close relation mitigated against granting appeal).

Thus, while BACM's claim for reformation on the basis of mutual mistake and fraud turns, in part, on additional questions of representation and reliance that are not relevant to BACM's claim for breach of the Assignment and involve separate sections of the Deed in Lieu, the claims are similar in that both: 1) turn on the interpretation of the Deed in Lieu and the scope of its provisions; 2) share the same factual background, save the exceptions noted; and 3) allege the same illegal conduct – usurping claims and remedies that were transferred to BACM. *See Lowery v. Fed. Express Corp.*, 426 F.3d 817, 822-23 (6th Cir. 2006) (concluding that "whether or not the elements are the same, plaintiff's retaliation and breach of contract claims assert a right to be free from retaliation" and thus are similar enough to justify delay and deny certification); *Wood v. GCC Bend, LLC*, 422 F.3d 873, 880 (9th Cir. 2005) (finding that although the claims were distinct enough to be considered separate, the "practical effect of certifying the constructive discharge issues in this case is to deconstruct plaintiff's age discrimination action so as to allow piecemeal appeals with respect to the same set of facts").

11

The complex nature of the case further exacerbates these concerns. In all, the case involves four major actors [QSI, Quality, GE, and BACM], separate interventions and settlements by parties who either were once part of the litigation and now are not or vice-versa, multiple claims by and against each party, including ten different cross claims between QSI and BACM alone, and a significant change in subject matter – what initially began as, in essence, a landlord-tenant dispute [with a occupant in fact who was not the original lessee] has morphed into primarily a contract dispute. Simply put, as a matter of judicial efficiency and convenience it would be more practical if all claims arising out of this case were resolved here and then considered only once in the appellate court.

BACM, furthermore, has not presented any credible arguments for departure from the normal practice of waiting until final resolution of this case to allow appeal. *See Liberte Capital Group, LLC v. Capwill*, 2006 U.S. Dist. LEXIS 20748, *15 (N.D. Ohio) (finding, though the *Corrosioneering* factors mitigated against certification, that certification was appropriate as a means of providing immediate relief to fraud victims in a seven year old case). BACM argues, without any support or explanation, that QSI may become insolvent before this trial is completed. An unsupported allegation, however, about the possibility of bankruptcy, without presentation of reasons to support such a suspicion, does not, by itself, justify certification for appeal.

## Conclusion

Having been presented with no reason why immediate certification is necessary, considering the similarity of the claims for which certification is requested to BACM's remaining claims and having taken account of the degree of practical difficulty that piecemeal review of this case would cause, I deny BACM's request for certification.

It is, therefore, hereby

ORDERED THAT BACM's motion for certification for appeal of its claims against QSI for breach of the Deed in Lieu and breach of the Assignment, under the Deed in Lieu, shall be, and the same hereby is denied.

So ordered.

s/James G. Carr
James G. Carr
Chief Judge